154

Common Pleas Court of Hamilton County.

LEON L. WOLF V. PRUDENTIAL INSURANCE CO.

Decided May 2, 1933.

*Joseph L. Meyer* and *Benjamin S. Schwartz,* for plaintiff.
*Heintz & Heintz,* for defendant.

MATTHEWS, J.

This is an action upon two insurance policies to recover premiums paid under protest and monthly instalments. The policies are for five thousand dollars ($5,000) each and are identical in their terminology.

The insured received injuries in an automobile accident on October 11, 1929, which injuries, it is admitted, have rendered him wholly, continuously and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value during the remainder of his lifetime.

The only provisions of the policy necessary to be considered are those providing for waiver of premiums and

for payment of monthly instalments upon proof of such injuries. These provisions are as follows:

"*Disability before Age* 60: *Waiver of Premiums—Payment of Insurance in Monthly Instalments.* · If the insured shall become totally and permanently disabled, either physically or mentally, from any cause whatsoever, to such an extent that he (or she) is rendered wholly, continuously and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value during the remainder of his (or her) lifetime, and if such disability shall occur at any time after the payment of the first premium on this Policy, while this Policy is in full force and effect and the Insured is less than sixty years of age, and before any non-forfeiture provision shall become operative, the Company, upon receipt of due proof of such disability, will grant the following benefits:

" (1) *Waiver of Premiums.*—The Company will waive the payment of any premium or premiums the due date of which, as specified on the first page hereof, shall occur after receipt by the Company of said proof of such disability.

" (2) *Payment of Insurance in Monthly Instalments.*— The Company will, in addition to waiving the premiums, pay to the Insured at its Home Office the amount insured, less any indebtedness under this Policy, in one hundred and twenty monthly instalments during ten years, each instalment to be of the amount of· $9.74 per $1,000 of insurance payable. The first ·of such monthly instalments shall be paid immediately upon receipt by the Company of due proof of such disability and subsequent monthly instalments shall be paid on the first day of each month thereafter.

"The total amount of insurance under this Policy at any time after one or more of such instalments have been paid shall not exceed the commuted value of such of said instalments as are not then due computed at the rate of three and one-half per cent. per annum compound interest, and loan and non-forfeiture values correspondingly modified shall be available to the Insured irrespective of said waiver of premiums. Any indebtedness incurred on account of the Policy during the Instalment period shall be deducted from the commuted value of the unpaid instalments at that time, computed as above, and the amount of each of such unpaid instalments shall be correspondingly reduced.

"Any insurance remaining at the death of the Insured shall be paid to the Beneficiary or Beneficiaries designated in the Policy.

"* * * *Proof of Continuance of Disability.*—Notwithstanding the acceptance by the Company of proof of total and permanent disability, the Insured, upon demand by the Company from time to time, but not oftener than once a year after such disability has continued for two full years, for the purpose of verifying that such disability is actually permanent and not temporary, shall furnish due proof that he (or she) actually continues in the state of disability defined above; provided, however, that such demand shall not be made in the case of the "Recognized Disabilities" specified above, other than the loss of the sight of both eyes. In case of failure to furnish such proof, no further premiums shall be waived and no further monthly instalments shall be paid on account of such disability, but any insurance then remaining under this Policy shall be continued in force subject to the payment by the Insured of any premium or premiums, based on such insurance, the due date of which premium or premiums, as specified on the first page hereof, shall occur thereafter."

The only issue in the case is as to when the insured satisfied the terms of the policy requiring "due proof" of his disability. It seems clear, under the authorities, that the defendant's liability arises only upon "due proof" and that it is limited to a waiver of premiums and payment of monthly instalments from that date, so long as the disability continues, until the full amount of the policy is paid, either by such monthly instalments or in the event of death by the payment of whatever remains unpaid. *Parker* v. *Jefferson Standard Life Insurance Co.*, 155 S. E., 617; *Walters* v. *Jefferson Standard Life Insurance Co.*, 20 S. W. (2d) 1038; *Orr* v. *Mutual Life Insurance Co.*, 57 Fed. (2d) 901; *Corbett* v. *Phoenix Life Insurance Co.*, 259 N.Y.S., 221.

The policy does not define the phrase "due proof." In *Standard Accident Insurance Co.* v. *Bennett,* 16 Fed. (2d) 721, at 723, it is said that its requirements are less formal than is required by the phrase "proof of loss."

In *Fitchburg Savings Bank* v. *Massachusetts Bonding & Insurance Co.*, 174 N. E. (Mass), 324, the court says that it means something more than the unverified statement of the insured.

The last cited case, however, was not an action upon a life insurance policy. A case identical in all essentials

with the case at bar is that of *Carson* v. *New York Life Insurance Co.*, 203, N. W., 209, and at page 211, the court says on this subject:

"But in a case of this nature, where the insured may not be able to obtain other testimony than his own of a disability which entitles to the insurance, we do not think he should be debarred from presenting his proof in court, if it be not taken as due proof by the company. The policy does not provide such an unreasonable requirement as that the proof of loss must be satisfactory to the insurer. It simply provides for due proof."

The court concludes, therefore, that as a trier of the facts it is necessary to weigh the evidence for the purpose of determining at what date the plaintiff placed the defendant in possession of proof so as to make operative the provision of these policies that have been quoted.

The plaintiff testified that as early as April or May, 1930, he was furnished with papers, or blanks, by the defendant, and that in June or July of that year he went to the office of the defendant and filled out certain blanks. Inasmuch as these blanks were not introduced in evidence, recourse to oral evidence as to what these answers contained was necessary. Naturally the plaintiff was unable to state exactly what these blanks contained. They undoubtedly related in some way to a claim made under these policies. The difficulty we have is the uncertainty as to exactly what was said as to the permanency of the disability.

The plaintiff had prior to this date paid matured premiums under protest, and as the same conditions that exempted from payment of premium also required payment of the monthly instalments—that is permanent disability and due proof thereof—that was notice that the plaintiff was claiming total disability at that time.

I have reached the conclusion that what then happened prior to October, 1930, at least, was notice to the defendant that the plaintiff was making a claim, but that it fell short of the "due proof" required by the terms of the policy.

The earliest documentary proof that was introduced in evidence is dated in October, 1930. This documentary evi-

dence consists in the application signed by the plaintiff, which is headed: "Application for Total and Permanent Disability Benefits"; document signed by Doctors Freiberg, styled: "Proof of Total and Permanent Disability"; documents signed by Doctor Max Dreyfus, styled: "Proof of Total and Permanent Disability"; and a document signed by C. H. Hooker, styled: "Investigation Report."

Upon the subject of the permanency of the disability, I glean from these documents the following: Doctor Dreyfus answered the questions contained in the document signed by him as follows:

"Q. Has the insured recovered sufficiently to engage in any gainful work? A. No.

"Q. If so, give date on which first able to resume any duties? First able to resume duties. A. "X".

"Q. Approximately when do you think the insured will be able to perform some work. (Kindly give date.) A. Impossible to estimate; he had open operation April 2nd, 1930, by Drs. Freiberg, but there is still non-union.

"Q. Has the insured's condition shown recent improvement? Give particulars. A. No; another operation contemplated.

"Q. Do you consider the insured so disabled that he or she will *for all time* be prevented from engaging in any gainful work? If so, on what date did you first conclude that the insured would *never again* be able to engage in any profitable employment? A. Depends on union of fragments."

The Doctors Freiberg answered the questions submitted to them, as follows:

"Q. Do you believe the insured to be wholly incapable of engaging in any kind of gainful work? A. Patient is unable to use right arm, which is in a splint; is unable to travel alone; can not dress himself.

"Q. If so, from what date has the insured been continuously so disabled? A. From the October 11, 1929, to the present time.

"Q. Has the insured sufficiently recovered to engage in any gainful work? If so, give date on which first able to resume any duties. A. As patient's work requires travel, he is unable to attend to his work.

"Q. Approximately when do you think the insured will be able to perform some work? (Kindly give date.) A. An

open operation is to be done; recovery will not be expected for several months.

"Q. Has the insured's condition shown recent improvement? Give particulars. A. There is some slight increase in callous formation, but open operation will be necessary.

"Q. Do you consider the insured so disabled that he or she will *for all time* be prevented from engaging in any gainful work? If so, on what date did you first conclude that the insured would *never again* be able to engage in any profitable employment? A. No."

The insured in his application stated that he had been continuously incapable of working since the accident, that his disability had not ended, and that he was to be operated on again and had no idea what the desults would be.

In the Investigation Report signed by C. H. Hooker, he said:

"I was personally sent for, but at the time thought it may only prove temporary—and have found out today all other Companies have recognized this as permanent disability and are paying monthly—or waived premiums from date of accident."

And in answer to the question as to whether the disability had ended, he stated:

"Not ended—going to Hospital to be operated on again —has been in a cast since accident, unable to attend to business."

He also stated that the plaintiff's "health was affected previous to accident," and that the injury was received in "a severe automobile accident in which he received a comminuted fracture of right humerus."

At the trial the claim was made that the investigation report should not be received in evidence for the reason that the evidence disclosed that C. H. Hooker was an insurance solicitor rather than an insurance investigator.

As I view it, this is unimportant. It is unimportant whether he was acting as the agent of the plaintiff or of the defendant, at the time. His report was delivered to the defendant, and it was evidence on the subject of the

plaintiff's disability, regardless of the capacity in which he was acting.

From all this evidence the court draws the inference, however, that on October twenty-fifth, 1930, the defendant had received and was in possession of proof that the plaintiff had received injuries rendering him wholly, continuously and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value during the remainder of his lifetime. Of course, the proof was not conclusive. It did not remove the possibility of recovery, but that was not necessary. The provision for re-examination once a year to determine whether the disability was still in existence is conclusive that the proof originally furnished might not remove all possibility of discontinuance of the disability at some time in the future. For that reason I do not believe that the answer "No" to the question of whether or not the insured was so disabled that he would for all time be prevented from engaging in any gainful work should be given any great weight as against the description of the injury and its duration at that time. More than a year had elapsed since the accident. There had been no recovery. The proof which was furnished on or before October twenty-fifth, 1930, showed that the plaintiff had received a compound comminuted fracture of upper half of right humerus running into and involving shoulder joint, and that at that time the fracture was un-united and another operation was in contemplation. This certainly was evidence of permanent disability. It is true that an inference could be drawn that there was a possibility of recovery, but had that inference been drawn it would have been proven wrong by subsequent events as is evident by the admission of the defendant that this disability is now, and has been permanent from the date of its infliction.

For these reasons the court finds in favor of the plaintiff that he is entitled to recover all premiums paid on these policies since October twenty-fifth, 1930, and is entitled to recover monthly instalments since that date, according to the terms of the policy.